BENJ. W. MAGNUSON and J. W. Magnuson, Copartners as Magnuson Brothers, Respondents, v. W. F. STIEHM, Appellant.

(168 N. W. 613.)

**Accounting — action for — evidence — findings — judgment.**

The action is one of accounting. Evidence examined and *held* to sustain the findings and judgment of the trial court.

Opinion filed May 25, 1918. Rehearing denied July 9, 1918.

Appeal from the District Court of McHenry County, North Dakota, Honorable *A. G. Burr,* Judge.

*F. B. Lambert,* for appellant.

"If a buyer of personal property does not pay for it according to contract, and it remains in the possession of the seller after payment is due, the seller may rescind the sale or may enforce his lien for the

price in the manner prescribed by chapter 99 on Liens." Comp. Laws 1913, § 5966.

"One who sells personal property has a special lien thereon dependent on possession for its price, if it is in his possession when the price becomes payable; and may enforce his lien in like manner as if the property was pledged to him for the price." Comp. Laws 1913, § 6864.

"The detriment caused by the breach of a seller's agreement to deliver personal property, the price of which has not been fully paid in advance, is deemed to be the excess, if any, of the value of the property to the buyer, over the amount which would have been due to the seller under the contract, if it had been fulfilled." Comp. Laws 1913, § 7153; Talbot v. Bowd, 11 N. D. 81.

*Hanchett & Johnston*, for respondent.

The defendant was not entitled to any damages arising out of the lumber transaction. He was not entitled to the price he had paid for same, when he still retained title and possession. Comp. Laws 1913, § 7156.

GRACE, J. Appeal from the district court of McHenry county, North Dakota, Honorable A. G. Burr, Judge.

This action is conceded by both parties to be an action for accounting. It is not necessary to set out the pleadings, but we will refer to them after we have stated the facts for the purpose of indicating where the burden of proof lies in this action, this being one of the main contentions in the case.

On the 19th day of October, 1915, the defendant sold his stock of lumber then located at Drake, North Dakota, to the plaintiffs. Such sale was by written contract. It is unnecessary to set out the contract in full; it is only necessary to state that the contract provided that plaintiff bought and defendant sold the stock of lumber at the 1915 invoice price as shown by the books and shipping bills, and in addition thereto the sum of $5. The contract further provided that the defendant until December 1, 1916, was to be allowed to purchase lumber and building material from the plaintiffs at 10 per cent above invoice price laid down in the yard during such period. The right of the defendant to purchase lumber from the plaintiffs under such contract to December

1, 1916, was limited to a dwelling house in Drake and all building and lumber materials needed by the defendants on the farm in the Drake territory then owned by him. The stock of lumber was situated on lots 14 and 15 in block 2 in the original town site of Drake. There is a covenant in the contract that the defendant would lease such lots to the plaintiffs at $8 per month for a period of three years from the date of the contract, with the privilege, to said plaintiff, to extend said lease for two years, and a provision, in the lease, that the plaintiffs might purchase said lots for $800 at any time during the life of the lease. The foregoing is the substance of the contract and all that need be referred to.

Plaintiffs went into immediate possession and all the rough lumber outside of the sheds was inventoried or listed. The inside lumber or that in the shed was not listed. There is some controversy about some lumber claimed to have been burned or partially burned in one of the sheds. Checking up an inventorying of all this finishing lumber seems to have been completed in the month of February, 1916.

It is conceded that the plaintiffs paid the defendant $3,150. We refer now to plaintiffs' amended complaint, which first states that the plaintiffs claim $494.50 for lumber and material sold back to the defendant after the purchase of said lumber stock by the plaintiffs. Referring to the pleadings, it is found the amended complaint states cause of action for lumber and material sold the defendant for $494.50, which lumber and material was sold to defendant under that clause of the contract above referred to, where defendant had the privilege of purchasing lumber until December 1, 1916, at cost price, at the yard, plus 10 per cent. The complaint goes on further to allege the purchase of the stock of lumber under the contract, and alleges the payment of $3,150 on that account, and alleges that said amount was sufficient to pay and did pay any and all sums which the defendant might have coming from the plaintiffs for the purchase price of said lumber under said contract, and alleges there is nothing due from the plaintiffs to the defendant upon such account, and the prayer, in the plaintiffs' complaint, asks that it be adjudged that there is nothing due from the plaintiffs to the defendant, and asks for judgment of $494.50 against defendant.

The answer alleges there are mutual obligations existing between plaintiffs and defendant, then sets out the contract in full, and alleges

the failure and neglect of the plaintiffs to comply with the contract, and alleges that the plaintiffs owe the defendant $236.73 on principal and $40 interest, and further alleges that the plaintiffs failed and refused to allow the defendant the full price agreed to in their contract; that the plaintiffs failed and refused to allow the defendant the full rights agreed to in their contract and refuse to give him credit for materials and lumber, and failed to deliver the defendant lumber and building material he ordered from time to time in accordance with his contract, even when they had such building material on hand, thus compelling the defendant to go elsewhere and pay the regular retail price for such stock, and alleges that plaintiffs have overcharged the defendants for lumber and building material purchased under said contract. The answer then concludes with a prayer for an accounting, and that the defendant have judgment for the amount found to be due.

The merest inspection of the pleadings discloses that the plaintiff seeks to recover nothing excepting the account for $494.50, which was lumber sold by plaintiffs to the defendant, under that clause of the contract to which we have previously referred, for defendant's use. Plaintiff, in his complaint, claims that part of the original contract, which had reference to the payment for the stock, had been satisfied by the payment of $3,150, and claims the contract was fully completed in this regard. It would appear, therefore, that the plaintiffs were not seeking an accounting of the whole transaction, but simply the recovery for the $494.50 item, most of which was concededly due them. The defendant, however, comes in and sets up the contract in full, and alleges there are mutual accounts existing between the parties, and demands a full accounting of all the transactions. With the pleadings in this state, we agree with the conclusion of the trial court that the burden of proof was with the defendant. The plaintiffs' claim being conceded that there was $3,150 paid on the purchase price, and plaintiffs claiming that was the whole of the purchase price, and claiming that to be a payment in full for all the material, the burden is on the defendant to show it was not.

The amount of the value of the property at the time of the making of the contract was an unknown quantity, and it would appear to us that the burden of proof was on defendant to show the amount of property, to wit, lumber and building material which he sold plain-

tiffs and the value thereof; and especially is this true where plaintiffs allege the payment of a sum of money, and alleges that to be a full payment of the property so purchased under the contract. This view appears to be still more reasonable when it is remembered that the defendant purchased all the lumber and building material in question, and as such purchasers received the invoices and had greater opportunity to ascertain the value of the stock of lumber as determined by the invoices, or, if they were lost, then by submitting other competent evidences of value, than would the plaintiffs. For these reasons, we think, in this case, the burden of proof was clearly on the side of the defendant.

The defendant claims there was a settlement agreed upon for the amount shown in exhibit 33, which was $3,443.50 less $49.50, or $3,394. Exhibit 33 is claimed to show a total which is claimed to be a total invoice price as shown by exhibits 6 to 18 inclusive.

It is clear from the testimony, there was no settlement on the basis claimed by defendant, ever entered into by the parties. It is also equally clear from the answer, that there was no settlement on the basis claimed by the defendant. There was no attempt, in the defendant's answer, to plead the settlement. If the defendant relied upon the settlement which he claims he made, he would not be asking for an accounting. He would have alleged the settlement and the amount thereof and set it up as a counterclaim against the claim of the plaintiffs. The defendant does not do this, but sets up various grounds for recovery against the plaintiff. For instance, that the plaintiffs failed and refused to allow the defendant the full price in the contract, and refused to give him credit for lumber and material returned; that they refused to deliver to the defendant the lumber and building material he ordered from time to time, in accordance with his contract, even when they had such building material on hand, thus compelling the defendant to go elsewhere and pay the regular retail price, and for this the defendant claims damages. The defendant is also claiming for rents alleged to be owing him from the plaintiffs; and the defendant further alleges that he has applied to the plaintiffs for a settlement and an adjustment of their accounts, and has offered to produce his books and compare the same with the plaintiffs; and the plaintiffs refused and still refuse to adjust said mutual accounts. It is not neces-

sary to discuss, further, defendant's claim of settlement on the basis alleged by him. There was no such settlement.

If the findings of the trial court are not against the preponderance of the evidence, such findings should be sustained and the judgment affirmed. What evidence is there to sustain these findings?

The main evidence adduced in addition to the oral testimony of the witnesses is that of exhibit 3, which is a book alleged to contain the inventory and price of the stock of lumber, made in pencil by one Prychal. It totals $3,091.21. Exhibit 19 is an inventory of the same stock and prices which was prepared by Ben Magnuson, which totals $3,232; and exhibits 6 to 18 set forth the prices of the same stock, which exhibits were prepared by the defendant and total $3,394. Each of these exhibits was admitted in evidence, and we think the first two are sufficient to sustain the findings and judgment of the trial court. Prychal, who made exhibit 3, was an experienced lumberman in charge of the Bovey Shute Lumber Company at Drake, which was a line yard. He testified that he arrived at the prices stated in the inventory by an examination of his own invoices. He testified that, in 1915 and 1916, he was familiar with the 1915 invoice prices for western lumber at Drake, so that there is no doubt of his qualification as a witness. He made up a list of the lumber that was in the Stiehm yard in 1916. It was about a year after the plaintiffs purchased the same, and describing how this list was made out, in his testimony, he says:

Q. And how was that list made out?

A. Well, in the first place, we were called over there, myself and my man, and we each had a book; I had one and my man had one. Mr. Stiehm had one, and his son, Mr. Stiehm, also had one, and his daughter also took a copy of this from Mr. Stiehm's book and from his son's book.

Q. Was Mr. Magnuson there?

A. He also had a book.

Q. A book with a list of this lumber?

A. Yes.

Q. Mr. Stiehm was there with a book, a list of this lumber?

A. Yes. In other words, a five way check.

Q. Mr. Stiehm's son had a book?

A. Yes.

Q. How many copies were being made at the time?

A. Two copies. I was making one and Mr. Weber and Miss Stiehm, Mr. Stiehm's daughter.

Q. And was the list you made up checked up with the list Mr. Stiehm and Mr. Magnuson had?

A. Yes.

Q. And was it all checked over so as to see it was accurate and correct?

A. Certainly.

Q. I will now show you this book marked exhibit 3, and ask you if that is a list of lumber and building material which you made up at that time?

A. Yes, sir.

Prychal's testimony further shows he put the price on it at the 1915 invoice price. In other words, the value of the material set forth in exhibit 3 was valued according to the invoice price which Prychal paid for the same kind of lumber in 1915, and when exhibit 3 was finally completed, Prychal obtained the amount we have before stated. Defendant seeks to show there was a difference in price to line yards and independent yards, and that Prychal had not shown himself qualified to testify as to the price of lumber to independent yards. We do not find, however, there was any actual difference of prices shown, nor the amount thereof. It is clear that Prychal was well qualified as a witness to know the value of lumber in 1915 and 1916, and his testimony was competent, and he must be conceded to be a disinterested witness. He also testified there was no difference between the prices to the line yards and the prices to independent buyers. Exhibit 19 strongly tends to support the findings of the trial court. Exhibit 6 to 18 supports the claim of defendant, but there is nothing about exhibits 6 to 18 which gives them greater weight than the other exhibits, 3 and 19. Exhibits 6 to 18 were thirteen pages of items of the stock, giving prices of the stock, and was prepared by the defendant. We are quite clear that the findings of the court and the judgment are quite well sustained by competent testimony and evidence.

The defendant complains that the plaintiffs refused to sell him lumber and neglected to furnish lumber under that clause of the contract which provides that the defendant should be permitted to purchase lumber for a certain house in Drake and certain farm buildings until December 1, 1916, at wholesale and invoice price plus 10 per cent. There is no showing that plaintiffs refused to sell lumber to defendant under the terms of said contract when they had such lumber on hand and in stock. There is no showing that defendant notified the plaintiffs just what kind of lumber he was going to need, and, under the contract as it stands, we do not believe defendant was bound to have on hand, under penalty of damage, just what lumber defendant was going to call for. The reasonable interpretation of said part of the contract is that until December 1, 1916, defendant had the privilege of purchasing, from the plaintiffs, such lumber as defendant desired to purchase and plaintiffs had on hand, at 10 per cent above wholesale or invoice price, for use as provided by the contract. There is nothing obligatory on the plaintiffs to keep on hand any specific kind of lumber or material which defendant might so purchase at 10 per cent above wholesale price; neither did the plaintiffs bind themselves to keep any particular kind of lumber on hand out of which to satisfy defendant's demands. The clause in the contract was only a privilege extended to defendant for a certain time to purchase such lumber and material as the plaintiffs kept on hand at a lower rate than the regular retail price, and there was no agreement to deliver any specific kind or quality of lumber, and, in this regard and for the reasons above stated, the case is clearly distinguishable from that of Talbot v. Boyd, 11 N. D. 81, 88 N. W. 1026. In that case, the defendant agreed to exchange an equal number of bushels of wheat in February, 1908, with the plaintiff for certain other wheat, the defendant's wheat being seed wheat. The plaintiff, in that case, was to haul his wheat to the elevator and deliver the storage tickets to the defendant. Plaintiff complied with his part of the contract and demanded the seed wheat from the defendant, which was not forthcoming, and the plaintiff recovered damage for the breach of the contract. The facts and the contract in the two cases are very different, and hence we cannot see that Talbot v. Boyd was really in point.

Defendant makes claim for certain posts, claiming that he retained

possession, therefore had a lien on them under § 5966, Compiled Laws 1913, and § 6864. And we read the evidence, however, the posts were part of the stock sold to the plaintiffs, and such sale being completed, plaintiffs took immediate possession. This is conceded by the defendant where, in his brief, he uses the following language: "It is conceded by both parties that under the foregoing contract possession was immediately given, by the defendant to the plaintiffs, of the lumber yard and the stock therein contained; that at once, after going into possession, plaintiffs and defendant inventoried all of the rough lumber outside of the sheds, and within a week had completed such inventory," etc.

Defendant could not turn over possession of the yard and the stock and still retain possession. If he turned over possession which he did, he had no possession left out of which any lien could arise under the sections quoted. We hold that he had not possession of such posts and is entitled to no lien.

The only remaining question we consider is the question of rents, and in this regard we do not think the defendant has shown himself entitled to any rent. The item of $50 for rent of the lumber sheds clearly could not be recovered, as under the contract the plaintiffs were to have the use of the sheds as long as they should remain on the premises. The $20 item for lot 7 in block 2 is claimed by reason of a pile of building material being allowed to remain on the rear end of the lot abutting the lumber yard lots. The $25 charge for lot 15 in block 3 is claimed for leaving a pile of posts which were part of the posts purchased from the defendant upon a lot which adjoins the defendant's residence. Plaintiffs testify that defendant told him the posts could remain where they were until sold out, and that they need not move the same. If this be true, defendant could not recover the $25. Most of the posts were sold shortly after the purchase of the lumber shed. We do not think defendant is entitled to recover anything for this charge. The plaintiffs also testify that the defendant told them they might let the lumber remain on lot 7 in block 2 until sold. It also appears that this lot fronts upon Main street, and was rented to another party who had a place of business on the lot. We do not think defendant is entitled to recover anything by reason of the $20 claim for rent.

The learned judge of the district court appears to have given care-

ful consideration to this case; and the case being one of accounting, his findings and conclusions ought to receive careful consideration.

We are convinced, and are of the opinion, that the findings of the trial court are well sustained by the evidence.

The judgment appealed from is affirmed, with costs.